UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUNDAY HINTON, on behalf of herself and others similarly situated,<br><br>         Plaintiff,<br><br>  v.<br><br>DISTRICT OF COLUMBIA,<br><br>         Defendant. | Civil Action No. _____ |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

Pursuant to Federal Rule of Civil Procedure 23 and Local Rule 23.1, Plaintiff Sunday Hinton moves to certify this case as a class action, with the class defined as

> all transgender individuals who currently reside in a District of Columbia Department of Corrections (DOC) housing unit that does not accord with their gender identity,[1] or who will be detained in a DOC facility in the future.

Ms. Hinton further moves to appoint her counsel as class counsel. Defendant's counsel has not yet been assigned and therefore cannot be asked about Defendant's position on this motion. Ms. Hinton assumes the motion will be opposed.

**INTRODUCTION**

This case arises from Defendant District of Columbia's decision to house Plaintiff Sunday Hinton, a transgender woman, with male prisoners based on a policy that relies presumptively, and

---

[1] Gender identity means "[o]ne's innermost concept of self as male, female, a blend of both or neither – how individuals perceive themselves. One's gender identity can be the same or different from their sex assigned at birth and may not be visible to others." ECF 3-10 (Decl. of Rachel Cicurel ("Cicurel Decl.")), Ex. C (DOC Housing Policy), Ex. C. § 7(a), https://doc.dc.gov/sites/default/files/dc/sites/doc/publication/attachments/PP%204020.3F%20Gender%20Classification%20and%20Housing%2001-18-2018.pdf.

1

at times exclusively, on detained persons' anatomy to make housing determinations. Defendant's policy is facially discriminatory in violation of the Fifth Amendment's Equal Protection Clause and the D.C. Human Rights Act (DCHRA). The policy also flouts Defendant's obligation under the Due Process Clause to protect prisoners from objectively unreasonable risks of substantial harm by exposing Ms. Hinton to sexual assault, sexual harassment, and other forms of serious injury. Ms. Hinton seeks to challenge Defendant's policy under the Equal Protection Clause and DCHRA on behalf of herself and the class (Claims 1 and 2 of the Complaint); she challenges the policy under the Due Process Clause solely on behalf of herself (Claim 3 of the Complaint). Because Defendant's policy invidiously discriminates against all class members, class treatment of the equal protection and DCHRA claims is both necessary and warranted.

The putative class meets the prerequisites of Federal Rule of Civil Procedure 23(a). First, joinder is impractical because the class is sufficiently numerous, it includes future members who are currently unknowable, and all members face substantial barriers to filing individual actions. Second, the class members' claims share common questions of law, including whether Defendant's policy facially discriminates based on sex or gender identity, whether it must survive heightened scrutiny, and, if so, whether it can meet that standard. The claims also share common questions of fact, such as whether the justifications offered by Defendants for its housing policy have evidentiary support. Third, Ms. Hinton's claims are typical of the class claims because she suffered the same injury as those alleged in the class claims and seeks relief based on the same legal theories. Fourth, Ms. Hinton and her experienced counsel will fairly and adequately protect class interests and will vigorously prosecute the action on behalf of the class.

Further, certification of the proposed class—and provisional certification, in conjunction with emergency relief—is warranted under Rule 23(b)(2), because Defendant is acting in the same

manner with respect to the class, such that a declaration and injunction with respect to the whole class is appropriate.

Class members' claims are not dependent on the facts regarding their underlying (alleged or adjudicated) criminal conduct or on any other individualized determinations. The central question is whether it is lawful for Defendant to focus on transgender inmates' genitalia in deciding where to house them, with the result that transgender people are being housed with people of the opposite gender, despite its attendant risks to the particularly vulnerable transgender population, and even though Defendant imposes no such burden on cisgender people.

This Court should therefore certify the proposed class and appoint class counsel.

## FACTS

Having recounted the relevant facts in her Application for a Temporary Restraining Order and Motion for a Preliminary Injunction, Plaintiffs summarizes them here briefly. Under DOC Policy 4020.3F, which was adopted in 2018, transgender residents are initially assigned to an intake unit that corresponds with their anatomy (not their gender identity) and required to remain in a single cell in that unit for up to 72 hours ("excluding weekends, holidays, and emergencies"). ECF 3-10 (Cicurel Decl.) Ex. C at §§ 2(a), 10(b). Transgender residents can request that the Transgender Housing Committee review their long-term placement, *id.* at § 11(d), but housing based on anatomy, not gender identity, remains the default approach, *id.* at § 2(a); ECF 3-5 (Declaration of Deborah Golden ("Golden Decl.")) ¶ 2 ("I have never had a client in the DOC housed based on anything other than their sex assigned at birth."). In January 2020, Defendant suspended the Transgender Housing Committee (without any word on when it would reconvene) and made anatomy the exclusive criterion for housing placement. ECF 3-10 (Cicurel Decl.) ¶¶ 5, 8. Now, DOC gives transgender prisoners a choice between housing in protective custody

(effectively solitary confinement for the duration of their incarceration) or assignment to a unit that does not correspond with their gender identity and exposes them to risks of sexual assault and harassment. *See* ECF 3-10 (Cicurel Decl.) ¶ 4, 5; ECF 3-5 (Golden Decl.) ¶¶ 5, 6; ECF 3-6 (Declaration of Terry Kupers ("Kupers Decl.")) ¶¶ 3, 6, 7). Ms. Hinton, the proposed class representative, is a transgender woman who was incarcerated on April 26, 2021, and was assigned to a male housing unit based solely on her anatomy. ECF 3-10 (Cicurel Decl.) ¶¶ 3–5. Despite repeatedly asking to be moved, she remains in a men's unit because of DOC's focus on anatomy as the default (and currently, sole) criterion in determining housing assignments for transgender prisoners. *See* ECF 3-10 (Cicurel Decl.) ¶¶ 4, 5; ECF 3-8 (Declaration of Sunday Hinton ("Hinton Decl.") ¶¶ 5–7. This lawsuit followed.

## ARGUMENT

A plaintiff whose suit meets the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). To meet these requirements, the "suit must satisfy the criteria set forth in [Rule 23(a)] (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id.* These standards are met here.

**I.     The Proposed Class Satisfies the Rule 23(a) Requirements.**

    **A. The Proposed Class Satisfies Rule 23(a)(1).**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A]lthough the numerosity requirement is often thought of in sheer numerical terms, its 'core requirement is that joinder be impracticable,' and "the presence of many class members" is not the only way to satisfy Fed. R. Civ. P. 23(a)(1). *N.S. v.*

*Hughes*, 335 F.R.D. 337, 352 (D.D.C. 2020) (quoting 1 Newberg on Class Actions § 3:11 (5th ed.)), *modified on clarification on other grounds sub nom. N.S. v. Dixon*, 2020 WL 6701076 (D.D.C. Nov. 13, 2020). Accordingly, "[t]here is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination requires examination of the specific facts of each case and imposes no absolute limitations." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) (quoting *Gen. Tel. Co. of the Northwest Inc. v. EEOC*, 446 U.S. 318, 330 (1980)); *see also Thorpe v. District of Columbia*, 303 F.R.D. 120, 144 (D.D.C. 2014) ("There is no specified or minimum number of plaintiffs needed to maintain a class action." (citation omitted)). Nevertheless, courts in this district have found that a class is presumptively numerous enough to satisfy Rule 23(a)(1) if it includes forty or more members. *See Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 205 (D.D.C. 2018). In any event, in applying Rule 23(a)(1), courts not only consider the number of class members but also factors such as the "financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *N.S.*, 335 F.R.D. at 352 (quoting *D.L. v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017)).

In this case, joinder is plainly impracticable. Deborah Golden, an attorney who has worked with people ensnared in the D.C. criminal justice system for nearly 20 years, estimates that between 40 and 60 transgender people currently reside in the D.C. Central Detention Facility (CDF) and the Correctional Treatment Facility (CTF). ECF 3-5 (Golden Decl.) ¶¶ 1, 3. She bases this estimate on the fact that 2.77% of D.C. residents are transgender, 1,435 people currently reside in the CTF and CDF, and, based on her experience, which is confirmed by academic research, transgender people, as members of a marginalized community, are "overrepresented in jail and prison

populations." *Id.* ¶ 3. Moreover, given that, Ms. Golden has "never had a client in the DOC housed based on anything other than their sex assigned at birth," *id.* ¶ 2, it is likely that all, if not most, of the 40 to 60 transgender residents fall within the class definition. As noted, "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." 1 Newberg on Class Actions § 3:12 (5th ed.) Here, that total is met by the *current* transgender population in DOC custody on its own. Factoring in the untold number of *future* transgender residents who will be housed based on DOC's policy makes the class size much larger.

      Nonnumerical factors further show why joinder is impractical. *J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019) (noting that such factors can lead to certification for classes with "fewer than 20 members"). For instance, classes, like this one, that include "future claimants generally meet the numerosity requirement due to the impracticality of counting such class members, much less joining them." *Id.* at 1322 (internal citation and quotation marks omitted); *D.L. v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013) ("Future members make joinder inherently impracticable because there is no way to know who they will be . . ." (cleaned up)); *see also Ogden v. Figgins*, 315 F.R.D. 670, 673 (D. Kan. 2016) ("[T]he ever-changing nature of jail populations makes identification of all of the class members nearly impossible."); *J.D. v. Nagin*, 255 F.R.D. 406, 414 (E.D. La. 2009) (same).

      Another factor militating in favor of certification arises when the "pursuit of individual actions on behalf of the class members would be impracticable." *D.L.*, 302 F.R.D. at 11. Here, all class members are (or will be) incarcerated, which makes it extremely difficult for them to sue individually. *See, e.g.*, D.C. Code § 12-302 ("Disability of Plaintiff") (tolling statutes of limitations for incarcerated individuals on the ground that imprisonment is a disability to filing a lawsuit). That hardship is exacerbated by the poverty that the overwhelming majority of putative class

members likely endure.[2] *See D.L.*, 302 F.R.D. at 11 (considering "the financial resources of class members" in assessing Rule 23(a)(1)); *Colo. Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 359 (D. Colo. 1999) (holding joinder impracticable where many class members could not afford to bring individual actions); *Jackson v. Foley*, 156 F.R.D. 538, 541-42 (E.D.N.Y. 1994) (holding joinder impracticable where the majority of class members came from low-income households, greatly decreasing their ability to bring individual lawsuits).

Putative class members' legitimate fears of adverse consequences while in DOC custody if they voice concerns also makes individual suits less likely. As Plaintiff attests in her declaration, when transgender prisoners voice complaints about their housing status, they risk transfer to protective custody, a punitive form of segregation that many find psychologically debilitating and which may be long lasting. *See* ECF 3-5 (Golden Decl.) ¶ 6; ECF 3-10 (Cicurel Decl.) ¶ 14. This fear, combined with the harassment transgender people routinely face from jail and prison officials,[3] likely deters individual litigation, which in turn makes joinder impracticable. *See, e.g.*, *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (certifying 20-member class in action alleging racial discrimination by school district where teachers could have "a natural fear or reluctance" to sue individually).

Because joining all members of the putative class is impractical, Rule 23(a)(1) is satisfied.

---

[2] Elijah Adiv Edelman et al., D.C. Trans Coal., *Access Denied: Washington, DC Trans Needs Assessment Report* (2015), https://dctranscoalition.files.wordpress.com/2015/11/dctc-access-denied-final.pdf (finding that over 46% of transgender District residents (and 57% of transgender women of color) make less than $10,000 a year, compared to only 11% of District residents overall)); *see also* Tara O'Neill Hayes & Margaret Barnhorst, Am. Action F., *Incarceration and Poverty in the United States* (2020) (discussing link between poverty and incarceration).

[3] *See* Ctr. for Am. Progress & Movement Advancement Proj., *Unjust: How the Broken Criminal Justice System Fails Transgender People* 21 (2016), *at* https://www.lgbtmap.org/file/lgbt-criminal-justice-trans.pdf.

### B. The Proposed Class Satisfies Rule 23(a)(2).

Rule 23(a)(2), which requires that there be "questions of law or fact common to the class," is likewise met. The key to commonality is that class members' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Even a single common question" will support a commonality finding, *id.* at 359 (alterations omitted), so long as its resolution will "generate common answers for the entire class," *Thorpe v. District of Columbia*, 303 F.R.D. 120, 146-47 (D.D.C. 2014).

The proposed class meets this standard. Defendant's housing policy, at best, presumptively classifies transgender prisoners for housing purposes according to their genitalia rather than their gender identity, resulting in placements with people of the opposite gender—while cisgender people are guaranteed a housing placement with those of their gender. Some class members may have the opportunity to overcome this presumption; others do not. But the core question in this case is the lawfulness of Defendant's presumptive reliance on genitalia to make housing determinations, via a policy that applies to all class members. The injuries the policy imposes—the indignity of unjustified discrimination, the risk of misclassification, and the serious possibility of sexual assault and sexual harassment if misclassified—are shared by the class. Where class claims arise from a common source, complain of common injuries, and rest on a common theory, Rule 23(a)(2) is satisfied. *See D.L. v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) (explaining that commonality is established where there is a "uniform policy or practice that affects all class members").

The following list of common questions of fact or law reaffirms this point:

- Does Defendant's policy facially classify people based on sex?

- Does Defendant's policy facially classify people based on gender identity?

- Does transgender status constitute a quasi-protected class such that classifications based on transgender status receive heightened scrutiny under the Equal Protection Clause?

- Does the Defendant's housing classification scheme satisfy the applicable level of scrutiny under the Equal Protection Clause?

- Do Defendant's justifications for its classification scheme have evidentiary support?

- Does Defendant "limit" or deny individuals' access to a "facility, service, program, or benefit" on the basis of their "gender identity or expression" in violation of D.C. Code § 2-1402.73 (the DCHRA)?

Any one of these shared, central questions establishes commonality, even if there are "factual variations among the class members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003) (noting that such differences "will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members"). For example, although some class members may have suffered greater hardship than others, "Rule 23 does not require" that all plaintiffs endure "precisely the same injuries." *Id.* at 34 (quoting *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)). Nor does the presence of current and future detainees in the same class raise any concerns. *See J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019) (affirming certification of such a class). Put simply, there are several questions that are central and common to all class members' claims and the existence of any one of those questions is sufficient to establish commonality.

### C. The Proposed Class Satisfies Rule 23(a)(3).

Plaintiffs' claims are also "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is satisfied 'if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar

9

legal arguments to prove the defendant's liability.'" *Radosti v. Envision EMI, LLC.*, 717 F. Supp. 2d 37, 52 (D.D.C. 2010) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001)). The typicality requirement "has been liberally construed." *Bynum*, 214 F.R.D. at 34. As with commonality, "[t]ypicality is not destroyed merely by factual variations." *Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987) (internal quotations and citations omitted). "Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims." *Bynum*, 214 F.R.D. at 35; *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 196 (D.D.C. 2013) ("[C]ourts have found the typicality requirement satisfied when class representatives suffered injuries in the same general fashion as absent class members." (internal quotation marks and citation omitted)).

Ms. Hinton's claims are typical of the proposed class claims. Her claims, like the proposed class claims, arise from the same course of conduct—namely, Defendant's policy of presumptively housing transgender people according to their anatomy. Her claims seek to remedy the same type of injuries as the class claims (the risk of misclassification and the attendant consequences of residing with people of different gender identities). And her claims rely on the same legal theories as the class claims (invidious discrimination under the Equal Protection Clause and the DCHRA). Notwithstanding any individual differences that may exist between the Plaintiffs and other members of the proposed class, Plaintiffs' claims "are sufficiently interrelated with the class claims to protect absent class members." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 181 (D.D.C. 2015).

Accordingly, Plaintiffs' claims satisfy the typicality requirement of Rule 23(a)(3).

### D. The Proposed Class Satisfies Rule 23(a)(4).

The class representatives also "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To establish adequacy, "(1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (quoting *Nat'l Ass'n of Reg'l Med. Programs*, *Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976)).

Ms. Hinton satisfies both criteria. First, Ms. Hinton's interests are not antagonistic to those of the class. Ms. Hinton and the class members are suffering from the same harms. They seek the same litigation outcomes and would benefit from the same declaratory and injunctive relief. Moreover, Ms. Hinton is not seeking monetary relief, so no financial conflict can arise between her claims and those of other class members. Although Ms. Hinton also brings a separate due process claim exclusively on her own behalf, she seeks the same declaratory and injunctive relief through this claim as she does via the class claims; thus, the relationship between the independent claim and the class claims is symbiotic, not antagonistic. Moreover, Ms. Hinton's class declaration makes clear her desire to serve as a faithful class steward. ECF 3-8 (Hinton Decl.) ¶ 14 ("By being the class representative, I hope to help myself and all other transgender individuals incarcerated at the D.C. Jail receive housing that is safe, both physically and psychologically, and is consistent with our gender identity."). For these reasons, there is no conflict between Ms. Hinton and unnamed class members.

Second, Ms. Hinton's counsel are competent to represent the class and are prepared to vigorously defend the interests of the class as a whole. They have extensive experience litigating

11

cases involving criminal defendants and inmates, and in litigating civil rights class actions. *See* Decl. of Scott Michelman; Decl. of Steven Marcus.

Accordingly, the proposed class satisfies the adequacy requirement of Rule 23(a)(4).

## II. Class Certification is Appropriate under Rule 23(b)(2).

In addition to satisfying the four criteria of Rule 23(a), the proposed class must also fall into one of the three categories outlined in Rule 23(b). This class action qualifies for certification under Rule 23(b)(2), which permits class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The Supreme Court has explained:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (quotation marks and citation omitted).

Courts in this District have interpreted Rule 23(b)(2) to impose two requirements: "(1) the defendant's action or refusal to act must be generally applicable to the class, and (2) plaintiff must seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Steele v. United States*, 159 F. Supp. 3d 73, 81 (D.D.C. 2016) (internal citations and quotation marks omitted); *R.I.L-R*, 80 F. Supp. 3d at 182. To satisfy Rule 23(b)(2), "it is enough to show that a defendant has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity." *Bynum*, 214 F.R.D. at 37 (internal citation omitted).

Here, this requirement is plainly met. As discussed, Defendant's housing policy applies to all class members. Thus, Defendant's actions and the harms they impose are generally applicable

to the class. Accordingly, a declaration recognizing the illegality of this policy, or an injunction enjoining its application and effect, would "provide relief to every member of the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 360. And it is precisely such relief that Plaintiff seeks. *See* ECF 1 (Compl.) 12–13.

Certification of the proposed class is also appropriate because the injunctive and declaratory relief it seeks is necessary to avoid mootness and facilitate enforcement of judgments. *See* 1 Newberg on Class Actions § 2:13 (5th Ed. 2020). Given the temporary nature of many of the proposed class members' detention and the transitory nature of the proposed class population, absent certification, enforcing any judgment entered by the Court will be difficult. Class-wide final injunctive and declaratory relief is therefore appropriate to avoid mootness and to facilitate enforcement of any judgment this Court may enter.

Accordingly, all the requirements of Rule 23 are met, and the Court should therefore certify the proposed class so that all similarly situated people may benefit from the injunctive relief sought.

### III. The Court Should Designate Plaintiffs' Counsel as Class Counsel.

Upon certifying the class, the Court must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B); 23(g). Rule 23(g) requires the Court to consider the following four factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *Id.* at 23(g)(1)(A)(i)–(iv). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B).

Ms. Hinton's counsel satisfy all four criteria. Counsel from the D.C. Public Defender Service and the American Civil Liberties Union of the District of Columbia jointly represent Ms. Hinton. Counsel from both organizations are experienced federal litigators, most of whom have specific expertise in representing criminal defendants and incarcerated persons, and most of whom have extensive experience in class action litigation. *See* Decl. of Scott Michelman; Decl. of Steven Marcus.

As reflected in the complaint and preliminary injunction papers filed in this matter, Plaintiff's counsel have already devoted substantial time to investigating the factual and legal issues in this case, and will continue to do so throughout the pendency of the litigation. *See, e.g.*, *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010) ("The plaintiffs have shown that they will adequately represent the class. . . . Counsel have already committed substantial time and resources to identifying and investigating potential claims in the action.").

Accordingly, the Court should appoint Plaintiff's counsel as class counsel in this case.

**IV.   Alternatively, the Court Should Provisionally Certify the Class.**

The early stage of this litigation should not deter the Court from certifying the Plaintiff class, because the propriety of class treatment here is apparent. No consideration of the merits is required, because, "[a]s the Supreme Court has long held, courts may not examine whether 'plaintiffs have stated a cause of action or will prevail on the merits' in order to determine whether class certification is appropriate." *In re Veneman*, 309 F.3d 789, 794 (D.C. Cir. 2002) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)).

Nevertheless, should the Court not be prepared to certify the class at this time, it should certify the class provisionally, subject to later reconsideration or amendment. Courts in this district have done so many times. *See, e.g.*, *Kirwa v. U.S. Dep't of Defense*, 285 F. Supp. 3d 21, 44 (D.D.C.

2017) (granting provisional class certification in context of granting preliminary injunction); *R.I.L-R*, 80 F. Supp. 3d at 181 (same); *Chang v. United States*, 217 F.R.D. 262, 274 (D.D.C. 2003) (granting provisional class certification before defendants had filed their opposition to certification); *Bame v. Dillard*, 2008 WL 2168393 at *9 (D.D.C. May 22, 2008) (conditionally granting class certification "without prejudice to Defendant's renewed objections after the close of discovery"); *Kifafi v. Hilton Hotels Retirement Plan*, 189 F.R.D. 174, 178 (D.D.C. 1999) (granting provisional class certification and noting that Rule 23(c)(1) "provid[es] that class certification may be granted provisionally and subsequently altered or amended").

## CONCLUSION

For the reasons stated above, Plaintiff's motion should be granted. Plaintiff respectfully requests that the Court:

(1)   certify the proposed class, consisting of all transgender individuals who currently reside in a District of Columbia Department of Corrections (DOC) housing unit that does not accord with their gender identity, or who will be detained in a DOC facility in the future; and

(2)   appoint undersigned counsel to represent the class.

May 11, 2021                             Respectfully submitted,

/s/ Scott Michelman
Scott Michelman (D.C. Bar No. 1006945)
Megan Yan* (D.C. Bar No. 1735334)
Marietta Catsambas* (D.C. Bar No. 1617526)
Michael Perloff (D.C. Bar No. 1601047)
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation
   of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
202-601-4267
smichelman@acludc.org

/s/ Rachel Cicurel
Rachel Cicurel* (D.C. Bar No. 1024378)
Steven Marcus (D.C. Bar No. 1630882)
Public Defender Service for the District of Columbia
633 Indiana Avenue N.W.
Washington, D.C. 20004
Tel. 202-824-2774
Fax 202-824-2776
rcicurel@pdsdc.org

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2021, I served a copy of the foregoing Plaintiff's MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL on Defendant by emailing it to chad.copeland@dc.gov, stephanie.litos@dc.gov, and tonia.robinson@dc.gov, in accordance with D.C. Office of the Attorney General Office Order 2020-10 (April 1, 2020), https://oag.dc.gov/sites/default/files/2020-04/2020-10-OAG-OFFICE-ORDER-Temp-Service-Process.pdf. That Order provides that, during the pandemic, the District will not accept in-person delivery but will accept service when the required documents are emailed to the three individuals named above.

/s/ Scott Michelman
Scott Michelman

_____

* In accordance with D.D.C. Local Civil Rule 83.2(g), the attorneys whose names are marked with an asterisk above certify that: (i) they are members in good standing of the District of Columbia Bar; (ii) they are representing a petitioner who is indigent within the meaning of Local Rule 83.2(g), at no cost to petitioner; (iii) they have never been subject to disciplinary complaint or sanction by any court or other disciplinary authority; and (iv) they possess a copy of the Local Rules of this District and are familiar with the rules generally and as they pertain to this proceeding.