UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUNDAY HINTON,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>*Defendant*. | Civil Action No. 21-01295 (JDB) |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER

### INTRODUCTION

Plaintiff Sunday Hinton, a transgender inmate in the custody of the Department of Corrections (DOC), filed this action for injunctive relief to obtain a transfer to a women's housing unit, in conformity with her gender identity.[1] Plaintiff argues, in her Application for Temporary Restraining Order (TRO) [3] that the failure to transfer her to a women's housing unit violates the Constitution's Equal Protection Clause, Due Process Clause, and the District of Columbia Human Rights Act (DCHRA). *See* Plaintiff's Memorandum in Support of Plaintiff's Application for a Temporary Restraining Order and Motion for Preliminary Injunction (Pl.'s Mem.) [3-1].

---

[1] Due to the expedited schedule set by the Court, the District of Columbia (the District) reserves the right to supplement this filing as it continues to investigate plaintiff's allegations. The District will submit a separate opposition to plaintiff's motion for a preliminary injunction.

Despite the relief requested in plaintiff's TRO, plaintiff on May 7, 2021 expressed to DOC her preference to be housed on a men's unit with her friend, who is also a female transgender inmate. Declaration of Charlene Reid (Reid Decl.), Ex. A ¶ 7. And after filing her TRO Application, on May 12, 2021, plaintiff once again expressed her preference to be housed with her friend on a men's unit. *Id.* ¶ 10. That same day, DOC approved and transferred plaintiff according to her request.

As a result, plaintiff's TRO Application is moot. DOC has already accommodated her requested housing preference, and she was transferred to the housing unit of her choice. Moreover, plaintiff's requested relief is inconsistent with the Prison Litigation Reform Act. *See* 18 U.S.C. § 3626(a)(2). Finally, plaintiff has not shown irreparable harm absent immediate relief, or that the balance of the equities and the public interest weigh in her favor. Plaintiff's application for a TRO should be denied.

## BACKGROUND

### I. Policies Governing Housing for Transgender Inmates

DOC enacted a "formal policy for housing 'transgender, transsexual, intersex, and gender variant persons who are incarcerated' … in the wake of the Prison Rape Elimination Act of 2003." *Richardson v. District of Columbia*, 322 F. Supp. 3d 175, 179 (D.D.C. 2018) (citations omitted).[2] DOC's current policy, "Gender Classification

---

[2]   The PREA's implementing regulations require correctional agencies, among other things, to establish a risk-screening process for inmates based on individualized determinations to protect "inmates at high risk of being sexually victimized … ." 28 C.F.R. § 115.42(a), (b). The regulations mandate, among other things, that "[a]

and Housing," DOC Policy and Procedure 4020.3G (eff. Oct. 15, 2019) (the Policy), requires the agency to determine an inmate's housing "based on his or her safety/security needs, housing availability, gender identity, and genitalia." Policy § 2b.[3] Once an inmate makes known his or her transgender or intersex status, the inmate is referred to the Transgender Housing Committee (THC) "to determine the inmate's housing based on his or her safety/security needs, housing availability, gender identity and sex at birth." *Id.* at 7.[4]

## II. Plaintiff's Custody

Ms. Hinton entered the custody of DOC on April 26, 2021. Pl.'s Mem. at 4. On intake, as required by the Policy, and current pandemic practices, she was housed alone in a single cell in "enhanced monitoring" for a period of 14 days. Reid Decl. ¶ 6; *see Banks v. District of Columbia*, 468 F. Supp. 3d 101, 186 (D.D.C. 2020), *appeal*

---

transgender or intersex inmate's own views with respect to his or her own safety shall be given serious consideration" but, ultimately, in making housing assignments, agencies "shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems." *Id.* §§ (c), (e).

[3] It appears that plaintiff references a superseded policy. *See* Pl.'s Mem. at 2, which cites "DOC Policy 4020.3F." *Cf.* Exhibit C to Cicurel Decl. (DOC Policy 4020.3E (eff. Jan. 18, 2018). The current DOC Policy, 4020.3G (eff. Oct. 15, 2019), is available online at *https://doc.dc.gov/publication/gender-classification-and-housing* (last visited May 12, 2021).

[4] The THC is composed of the DOC's Chief Case Manager, a DOC mental health specialist, a medical practitioner, a mental health clinician, a correctional supervisor, a case manager, a PREA Coordinator, a representative from the Mayor's Office on LGBTQ affairs and a volunteer "who is a member of the transgender community who is experienced and knowledgeable about transgender issues or an acknowledged expert in transgender affairs." Policy § 7h.

*filed*, No. 21-5033 (D.C. Cir. Feb. 8, 2021) (attaching DOC Memorandum regarding COVID-19 Policies and Procedures); Policy § 9. Ms. Hinton declined to be placed in protective custody, which is available to transgender inmates who fear for their safety. Pl.'s Mem. at 5; Complaint ¶ 39; Policy § 11(f).

Ms. Reid of DOC—who also serves on the THC—met with Ms. Hinton on April 30, 2021, to assist her in obtaining grooming materials. Reid Decl. ¶ 7. At that meeting, Ms. Hinton did not indicate that she wanted to be housed on a women's unit. *Id.*

On May 7, 2021, Ms. Hinton submitted a grievance request asking to be housed on the women's unit. *See* ECF No. 3-9 (Ex. A). Ms. Reid also met with Ms. Hinton on May 7. *Id.* ¶ 8. At that meeting, Ms. Hinton told Ms. Reid that she wanted to be housed on a men's unit with her friend, another female transgender inmate. *Id.* Ms. Reid told Ms. Hinton that she needed to complete the 14-day intake on the enhanced monitoring unit due to COVID-19 precautions and that, upon completion of the 14-day intake, her request for housing would be reviewed. *Id.* Ms. Reid also told Ms. Hinton that she would check on bed availability on the requested housing unit. *Id.* According to the Application for TRO, however, plaintiff maintains that she requested to be placed on a women's housing unit. Pl.'s Mem. at 5.

Today, May 12, 2021 (three business days after plaintiff filed her request), the THC met with Ms. Hinton, in person, and conducted an individualized assessment of plaintiff's health and safety concerns, as required by PREA and in accordance with

4

its Policy. Reid Decl. ¶¶ 9–10.[5] At the meeting, the THC asked Ms. Hinton about her housing preference and she again expressed her desire to be housed on the unit with her friend, another female transgender inmate, in a men's housing unit. *Id.* ¶ 10. The THC approved Ms. Hinton's request, which was subsequently approved by the Warden. *Id.* ¶ 10. Later that day, Ms. Hinton was transferred to her chosen housing unit and placed in a single cell per DOC's COVID-19 precautions. *Id.* ¶ 11.

### III. Procedural History

On May 11, 2021, Ms. Hinton filed this lawsuit against the District alleging violations of the Equal Protection Clause, Due Process Clause, and the DCHRA. Compl. [1]. Plaintiff concurrently filed an application for a temporary restraining order (TRO) [3], and motions for a preliminary injunction [4], and class certification [7]. In plaintiff's application for a TRO, plaintiff's only requested relief is that the DOC transfer her to a women's housing unit. Pl.'s Mem. at 15. Plaintiff separately requested that the Court shorten the District's time to respond to plaintiff's application for a TRO [5], allowing the District approximately one day to respond to plaintiff's TRO application; the Court granted plaintiff's motion for expedited briefing. *See* May 11, 2021 Minute Order.[6]

---

[5] The members of the THC present were Ms. Reid, Ms. Traci Outlaw from Unity Health Care, Mr. Charles Akinboyewa, Chief of Case Management for DOC, and Lt. Danielle Moore of the Operations Division of DOC. Reid Decl. ¶ 9.

[6] The District has additionally learned that plaintiff filed, on May 12, 2021, an Emergency Motion for Immediate Release in D.C. Superior Court. *See* Docket, *United States v. Hinton*, Case No. 2021 CF3 002366 (D.C. Super. Ct. May 12, 2021).

## LEGAL STANDARD

A temporary restraining order "is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "The same standards apply for both temporary restraining orders and preliminary injunctions." *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003).

A plaintiff seeking a TRO must establish that: (1) "[s]he is likely to succeed on the merits"; (2) "[s]he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [her] favor"; and (4) "an injunction is in the public interest." *Sherley*, 644 F.3d at 392. Because injunctive relief is an extraordinary remedy, a plaintiff seeking such relief must prove all four prongs of the standard before relief can be granted. *In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir 2013); *Winter*, 555 U.S. at 22. The plaintiff bears the burden of doing so. *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).

## ARGUMENT

### I. Plaintiff Is Not Likely To Succeed on the Merits of Any of Her Claims Because Her Requested Relief Is Moot.

Demonstrating a likelihood of success on the merits is a free-standing requirement for a TRO, *Sherley*, 644 F.3d at 393 (quotation omitted), and "a failure to show a likelihood of success on the merits is alone sufficient to defeat a [motion for TRO]," *Smith v. Henderson*, 944 F. Supp. 2d 89, 96 (D.D.C. 2013). The Court need not conclude that plaintiff will lose on the merits, only that she has not met the

6

extraordinary burden of showing a clear entitlement to immediate, extraordinary relief. *Sweis v. U.S. Foreign Claims Settlement Comm'n*, 950 F. Supp. 2d 44, 48 (D.D.C. 2013). Plaintiff must show not merely that success is a "possibility" but that it is "likely." *Winter*, 555 U.S. at 20–22. Here, plaintiff has not met her burden; she has not demonstrated that success on the merits is likely because her requested relief is moot.

The most fundamental limit to federal court authority is supplied by Article III of the Constitution and provides that the federal judicial power reaches only "Cases" and "Controversies." U.S. Const. art. III, § 2; *see Clapper v. Amnesty Int'l*, 568 U.S. 398, 408 (2013) ("[n]o principle is more fundamental"). Even if the litigation posed a live controversy when filed, "the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (internal quotation omitted). Declaratory relief cannot be granted once the underlying case or controversy dissipates. *See Conyers v. Reagan*, 765 F.2d 1124, 1127 (D.C. Cir. 1985) ("The Article III case or controversy requirement is as applicable to declaratory judgments as it is to other forms of relief."); *see also McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference*, 264 F.3d 52, 55 (D.C. Cir. 2001) (recognizing requests for declaratory relief are moot when "events outrun the controversy such that the court can grant no meaningful relief"). And "[c]orrective action by an agency is one type of subsequent development that can moot

a previously justiciable issue." *Pub. Emps. for Enviro. Responsibility v. Nat'l Park Serv.*, No. 19-3629, 2021 WL 1198047, *5 (D.D.C. Mar. 30, 2021) (quoting *NRDC v. U.S. Nuclear Reg. Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982)).

As described above, the District has already placed Ms. Hinton in her preferred housing unit. Ms. Hinton expressed her desire to be housed with her friend, another female transgender inmate, on a men's housing unit. Reid Decl. ¶ 10. The THC and the Warden approved that request today, May 12, 2021. *Id.* These subsequent developments have made it "impossible for [the] court to grant any effectual relief." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). The Court "cannot order the appellee departments to do something they have already done." *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986); *see Indian River Cty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C. 2017) ("A party may lack a legally cognizable interest in the outcome 'when, among other things, the court can provide no effective remedy because a party has already obtained all the relief it has sought.'") (quoting *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013)).

Moreover, "well-settled case law . . . requires a court to presume that government officials will conduct themselves properly and in good faith," *In re Navy Chaplaincy*, 850 F. Supp. 2d 86, 94 (D.D.C. 2012), and here, there is no evidence and no reasonable expectation that the alleged violation will recur given plaintiff's placement in the location of her choosing, *see Zukerman v. USPS*, 961 F.3d 431, 443 (D.C. Cir. 2020) ("[I]t is generally not appropriate to provide injunctive or declaratory relief from a superseded law." (citing *Initiative & Referendum Inst. v. USPS*, 685 F.3d

8

1066, 1074 (D.C. Cir. 2012))); *Daskalea v. Wash. Humane Soc'y*, 710 F. Supp. 2d 32, 40 (D.D.C. 2010) (finding no live controversy where prior version of statute was "no longer in force" and there was no allegation that the prior version "continue[d] to have any residual effect"); *cf. Citizens for Responsibility and Ethics in Wash. v. Wheeler*, 352 F. Supp. 3d 1, 13 (D.D.C. 2019) ("[W]here the defendant is a government actor—and not a private litigant—there is less concern about the recurrence of objectionable behavior." (citing cases)).

II. The Requested Relief Is Inconsistent with the Prison Litigation Reform Act (PLRA).

The PLRA's strict limits on preliminary injunctive relief apply to this "civil action with respect to prison conditions." 18 U.S.C. § 3626(a)(2); *see id.* § 3626(g)(2), (5) (defining "prison" as "any Federal, State, or local facility that incarcerates or detains juveniles or adults accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law"). The PLRA constrains the authority of courts to order preliminary injunctive relief, requiring that such relief "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The PLRA builds upon the already well-established rule that injunctive relief must be "narrowly tailored to remedy the specific harm shown." *Nev. Dep't of Health & Human Servs. v. U.S. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006); *see District of Columbia v. U.S. Dep't of Agric.*, No. 20-119, 2020 WL 1236657 at *12 (D.D.C. 2020) (observing that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the

9

plaintiffs") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Even assuming that the Court finds that plaintiff has sufficiently shown some constitutional harm that must be immediately corrected, plaintiff's requested relief would impinge on DOC's authority and responsibility to keep its residents safe. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.") (internal quotation marks and citation omitted). Upon intake, to contain potential spread of the COVID-19 virus, DOC housed plaintiff in a single cell for approximately two weeks, consistent with DOC's pandemic response policies to house new inmates on enhanced monitoring units prior to transfer to the general population. Reid Decl. ¶ 6. DOC then conducted an individualized assessment of plaintiff's housing needs—with plaintiff present and given an opportunity to be heard—and granted her request to be housed in a men's housing unit. *Id.* ¶¶ 9–11. Requesting, as plaintiff does in her application for TRO, that THC reach a conclusion that contradicts its decision and plaintiff's housing preferences would extend the Court's reach into DOC's operations further than necessary, and would not constitute the least intrusive means. Thus, the requested relief well exceeds what is permissible under the PLRA. *Cf. Valentine v. Collier*, 956 F.3d 797, 806 (5th Cir. 2020) (per curiam) ("These may be salutary health measures. But that level of micromanagement, enforced upon threat of contempt, does not reflect the principles of comity commanded by the PLRA.").

### III. The Remaining Factors Weigh in Favor of Plaintiff Because She Has Obtained Her Preferred Housing

Plaintiff cannot demonstrate irreparable harm. The D.C. Circuit has held that "failure to demonstrate irreparable harm is grounds for refusing to issue [injunctive relief], even if the other three factors entering the [TRO] calculus merit such relief." *Nat'l Min. Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011) (internal citation and quotation marks omitted). If a party fails to make a sufficient showing of irreparable injury, a court may deny a motion for preliminary relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Here, plaintiff has not met this burden. As discussed above, DOC has already granted plaintiff's request to be transferred to her preferred housing.

Even if a movant demonstrates a likelihood of success and irreparable injury, the Court still must balance the equities between the parties and consider the public interest. *Open Tech. Fund v. Pack*, 470 F. Supp. 3d 8, 31 (D.D.C. 2020). Those two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the balance of the equities and the public interest weigh in DOC's favor, and counsel against granting extraordinary mandatory injunctive relief that plaintiff herself does not request.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiff's application for a temporary restraining order.

Dated:  May 12, 2021.	Respectfully submitted,

	KARL A. RACINE
	Attorney General for the District of Columbia

	*/s/ Fernando Amarillas*
	FERNANDO AMARILLAS [974858]
	Acting Deputy Attorney General
	Public Interest Division

	*/s/ Pamela Disney*
	PAMELA DISNEY [1601225]
	BRENDAN HEATH [1619960]
	Assistant Attorneys General
	ANDREW J. SAINDON [456987]
	Senior Assistant Attorney General
	Equity Section
	400 Sixth Street, N.W., Suite 10100
	Washington, D.C.  20001
	(202) 807-0371
	pamela.disney@dc.gov

	*Counsel for Defendant*