UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUNDAY HINTON,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>*Defendant.* | Civil Action No. 21-01295 (JDB) |

**DEFENDANT'S RESPONSE TO THE COURT'S AUGUST 5, 2021 ORDER**

Defendant the District of Columbia (the District) provides the following responses to the Court's August 5, 2021 Order [31].

**1.      What is the difference with respect to housing and other conditions for an inmate in the general population of the intake unit as compared to an inmate in protective custody in the intake unit?**

Inmates housed under protective custody are housed on the same intake unit as inmates not under protective custody. Declaration of Kathleen Jo Landerkin [27-1] ¶ 9. Unlike the general population, inmates under protective custody must be housed in single cells or a cell with another inmate under protective custody, provided that the placement with another inmate does not create a safety risk for either inmate. *Id.* The Department of Corrections (DOC) often places general population inmates in single cells on the intake units when there is sufficient capacity to do so.

Additionally, inmates under protective custody have recreation time separately from inmates in the general population but with other inmates under protective custody, unless that presents a safety risk. *Id.* ¶ 10.

Like other inmates in the general population, inmates in protective custody are not shackled or restrained while on the intake unit. *Id.* ¶ 11. Restraints are only used if the protective-custody resident is moved off of the intake unit, such as for court appearances or video visits.

**2.     Under what provision of the H Policy, if any, is the PREA Victim Services Coordinator authorized to remove an inmate from protective custody at intake after the inmate's initial assessment?**

Under Section 10.a of the H Policy, the PREA Victim Services Coordinator conducts an initial safety and security assessment of all transgender inmates in protective custody within 24 hours of intake, excluding weekends, holidays, and emergencies. If the PREA Victim Services Coordinator determines that the inmate should not be housed on protective custody during the initial assessment, the inmate will be removed from protective custody at that time. This provision of the H Policy follows requirements of the PREA, which provides that a "[correctional] facility may hold [inmates at high risk of sexual victimization] in involuntary segregated housing for less than 24 hours while completing the assessment." 28 CFR 115.43(a).

**3.     Are there any formal or informal time limitations on the THC's decision, the Warden's approval, and the Director's final determination for disputed cases?**

The Transgender Housing Committee (THC) makes the decision regarding transgender inmate's housing immediately after meeting with the inmate. Though not formally noted in the H Policy, the Warden typically approves the decision on the same day or within 24 hours of the THC decision. For all the THC hearings that have occurred since June 17, 2021, the Warden has approved the THC's decision on the same day as the hearings. To date, no resident has appealed a THC decision to the Director of DOC.

4. **For the period since the H Policy took effect through August 17, 2021:**

a. **How many transgender inmates have been processed by DOC?**

One transgender inmate (Resident A) entered DOC custody since the H Policy was enacted on June 17, 2021.[1]

b. **How many THC hearings have been scheduled or held for those individuals?**

The THC scheduled and held a THC hearing for Resident A after her admission to the facility.

c. **How many THC hearings have been (i) requested, (ii) scheduled, and (iii) held for transgender individuals who were already in custody as of the effective date of the H Policy?**

For residents who entered custody prior to the enactment of H Policy, there have been six THC hearings requested, seven THC hearings scheduled, and seven THC hearings held since June 17, 2021.[2] The extra THC hearing was due to medical staff recommending that Resident B's hearing be rescheduled after she exhibited mental health-related issues in her first hearing. Of those seven inmates who submitted requests for a THC, four of the residents stated that they do not identify as transgender individuals and informed the THC that the forms had been submitted in error—one resident stated that he filled out the form in spite of its inapplicability and the other three residents stated that someone else had submitted the form without their knowledge and consent.

---

[1] The District refers to transgender inmates as Resident A, B, or C here to protect the inmates' privacy and to avoid disclosure of confidential medical information.

[2] Two additional gender housing requests forms were submitted through the residents' tablets that did not include valid resident names.

3

    d.  **Where has each transgender inmate who received a THC hearing been placed as a result of that hearing (women's unit or men's unit; general population or protective custody)?**

In total, three transgender residents requested and received a THC hearing since June 17, 2021: Resident A, Resident B, and Resident C, all of whom identify as female and were assigned "male" at birth. As a result of the hearings: (1) Resident A was placed in the general population of a men's unit and housed alone; (2) Resident B was placed in a men's mental health unit; and (3) Resident C was placed in a protective custody men's unit.

    e.  **On what basis has each placement referenced in (d) been made (gender identity or sex at birth; inmate preference, safety of transgender inmate, safety of other inmates)?**

Resident A requested to be housed according to her sex assigned at birth and the THC housed her according to her stated preference.

Resident B requested to be housed according to her sex assigned at birth. The THC housed her according to her stated preference and assigned her to the mental health unit, per the recommendation of medical staff. She was later transferred to the protective custody men's unit, at her request, until her transfer out of DOC's custody.

Resident C requested to be housed according to her gender identity. The THC decided to house her according to her assigned sex at birth in protective custody for her safety and the safety of other inmates. The THC came to this decision because Resident C had never previously identified as transgender during several previous periods in DOC custody nor had she provided any indication that she currently identifies as transgender (as is usually done by, for example, requesting depilatories or other specific grooming materials, undergarments, or medical treatment that are typically provided to transgender inmates). Prior to her THC hearing, Resident C had voluntarily checked herself into protective custody on her housing unit due to an issue with another

inmate. The THC offered to assign her to a protective custody men's unit that housed another transgender inmate instead of her previous housing unit, and she accepted that offer. Resident C can appeal this decision or request another THC hearing at any time, but she has not done so.

Dated:  August 17, 2021.         Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Pamela Disney*
PAMELA DISNEY [1601225]
BRENDAN HEATH [1619960]
Assistant Attorneys General
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C.  20001
(202) 807-0371
pamela.disney@dc.gov

*Counsel for Defendant*